UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| NATALIE WILKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 08-12-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF FRANKFORT, KENTUCKY, | ) | **MEMORANDUM OPINION** |
| and STEPHEN SUTTON, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of the Defendants' motion for summary judgment. [Record No. 18] For the reasons discussed below, the Court will grant summary judgment in favor of the Defendants regarding all claims except: (1) the excess force claim asserted under 42 U.S.C. § 1983 against Defendant Stephen Sutton in his individual capacity; (2) the excess force and the assault claims asserted under state law against Sutton in his official and individual capacity and against the City of Frankfort; and (3) the excess force claim asserted under Section 10 of the Kentucky Constitution against Sutton in his individual capacity.

**BACKGROUND**

This case arises from a fire occurring in the downtown area of Frankfort, Kentucky, on March 4, 2007.  The fire was intentionally started in a historic building on the 300 block of St. Clair Street.  The fire quickly spread to adjacent buildings and soon engulfed much of the block.  Several of the buildings were owned and managed by Plaintiff Natalie Wilkerson and her father.  After receiving a call notifying her of the fire at approximately 6:00 a.m., Wilkerson drove to the corner

-1-

of Main and Ann Streets, parked her car, and traveled on foot to St. Clair Street.  At St. Clair, Wilkerson encountered Defendant Stephen Sutton, an officer with the Frankfort Police Department, who had been dispatched to the scene.  After confirming that the Wilkerson's tenant was out of the building, Sutton ordered Wilkerson to return to the corner.  Wilkerson then began to walk back to Main Street with Ben Haggard, a friend who had just arrived at the scene.

However, as she was returning to Main Street, Wilkerson saw another friend, Scot Walters. Wilkerson changed direction and began walking toward Walters.  Before Wilkerson reached Walters, Sutton grabbed Wilkerson's arm.  When Wilkerson attempted to pull away, she was taken to the ground by Sutton.

The nature of the takedown and whether Wilkerson resisted Sutton's attempt to handcuff her are all disputed.  However, it is undisputed that Sutton sprayed one shot of pepper spray in Wilkerson's face and then handcuffed her wrists behind her back.  Wilkerson was subsequently arrested, taken to jail, and charged with disorderly conduct, resisting arrest, and third degree assault, all in violation of KRS §§ 525.060, 520.090, and 508.025, respectively.[1]  As a result of these events, Wilkerson claims to have suffered a broken right foot, contusions and lacerations to her body, physical pain, terror, humiliation, fear, frustration, anger, rage, and overwhelming emotional and mental distress and turmoil. [Record No. 2, pp. 5–6]

On March 4, 2008, Wilkerson filed a *pro se* Complaint in Franklin Circuit Court alleging numerous federal and state claims against Sutton in his official and individual capacity and against the City of Frankfort.[2] [Record No. 2] More specifically, the Complaint alleges the following causes

---

[1]      All charges against Wilkerson have been dismissed.

[2]      The action was removed to this Court on March 26, 2008.

-2-

of action against the City of Frankfort and Sutton:  (1) that Sutton's conduct deprived Wilkerson of her rights to "freedom from unreasonable arrest, freedom from search and seizure of her person and property, freedom from arrest without proper cause, freedom from unreasonable force by police officers, freedom from malicious prosecution, and due process of the law" in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 (collectively, "the § 1983 claims"); and (2) that Sutton's conduct constituted "the torts of excessive execution, excessive force, assault, false arrest, malicious prosecution, and false imprisonment" under Kentucky state law (collectively, "the state law claims"); and (3) that Sutton's "unjustified detention, arrest, malicious prosecution, and use of excessive force against Plaintiff constituted an unreasonable search and seizure of Plaintiff's person and an exercise of absolute and arbitrary power over the life and liberty of Plaintiff" in violation of sections 2 and 10 of the Kentucky Constitution (collectively "the state constitutional claims"). [Record No. 2, pp. 6–7]  The Complaint also alleges that the City of Frankfort failed to adequately train and supervise Sutton "as to the proper procedure and conduct in performing the duties of a police officer in circumstances similar to those which serve as the basis for this action" in violation of the United States Constitution and 42 U.S.C. § 1983.  [*Id.*, p. 7]

## THE STANDARD FOR SUMMARY JUDGMENT

The Defendants argue that they are entitled to summary judgment on all claims either because they are immune from liability or because the facts alleged are insufficient to support Wilkerson's claims even when viewed in a light most favorable to Wilkerson.  [Record No. 18, pp. 7–37] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Barr v. Lafon*, 538 F.3d 554, 561 (6th Cir. 2008). Additionally, summary judgment is also appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (quoting *Celotex*, 477 U.S. at 322). In contrast, "summary judgment is inappropriate when the evidence raises a genuine issue of material fact." *Barr v. Lafon*, 538 F.3d 554, 561 (6th Cir. 2008). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the burden to show that no genuine issue of material fact exists "but that burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008) (*citing Celotex*, 477 U.S. at 325). Once the moving party has met its burden of production, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

In reviewing a party's motion for summary judgment, a court's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Barr*, 538 F.3d at 561 (*quoting Anderson*, 477 U.S. at 249). In doing so, all evidence must be viewed in the light most favorable to the nonmoving party. *Id.* However, a mere scintilla of evidence is insufficient defeat a motion for summary judgment. *In re Petty*, 538 F.3d 431, 439 (6th

Cir. 2008). Rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Id.*

Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

### ANALYSIS – FEDERAL CLAIMS

During her deposition, Wilkerson explained the events surrounding her encounter with Officer Sutton in the following manner:

> Q. Okay. Let me ask you, independent of this map, if you can just tell me what happened.
>
> A. Okay. From the time I turned north on St. Clair Street, Officer Sutton stopped me. And I was crying. I was worried. I was instinctually just wanting to know what was going on. He told me I couldn't go any further. I told him that my dad owned the buildings; me and my dad owned the buildings. And, of course, I don't remember the exact words that were exchanged, but I told him that there were tenants in the buildings. . . .
>
>            *       *       *
>
> Sometime during our exchange, Ben Haggard walked up behind me and put his arm around me, was telling me it's okay, it's okay. And Officer Sutton told us to get back to the corner. And so Ben and I started walking towards the southeast — no, southwest corner of Main and St. Clair, sort of diagonally across that street. And I asked Ben to walk with me.
>
>            *       *       *
>
> We were about halfway across the street and I saw may friend Scot Walters, and I was relieved to see him and I took a couple of steps toward him. While I – at some point – like I said, a couple of steps. While I was still on the street, I hadn't gotten to the sidewalk yet, I felt somebody grab my arm. And I was, I mean, surprised a little. I was edgy, I guess, anyway. And so it wasn't a premeditated kind of thing,

so I can only after the fact attempt to describe what happened and it just happened so quickly.

But I tensed up and tried to pull away. And then I was grabbed, bear-hugged from behind. You know, at some point, although I don't know what, if it was visuals, kind of seeing who was behind me, I don't really, but I figured out that it was the Officer – again, I didn't know Officer Sutton at the time – bear-hugged me. And Scot was still standing just about five – he had come from the sidewalk onto the street at this point closer to me. And I made eye contact with him and said can you believe this is happening, and he said no.

And at that point, Officer Sutton used his force and body weight to tackle me, and I was facedown on the ground with him on top of me. Scot was still standing there, you know, just a few feet from all this. He said, "Take it easy on her. Go easy on her. She's a mother" or has a young daughter. And Officer Sutton was, you know, still sitting on me basically and trying to handcuff me.

He yelled at Scot to get away or get out of here or something. And he was trying to pull my arms back to handcuff me. And while he was on my back trying to pull my arms, he maced me. And from there, he was – from there, he handcuffed me, pulled me up off the street.

At about that time, a police officer came around the corner and stopped. That officer was Officer Redmon. And he got out of the car and got a water bottle and sprayed my face by the cruiser. I guess to wash off the mace. And without too much else happening, they put me in the back of the car and Officer Redmon drove me to the jail.

Oh, I did – while I was standing by the cruiser, Scot at that time had gone back over, walked over to St. Clair where there was a group of people standing in front of the spot where I had originally encountered Officer Sutton. And I made eye contact with him again and asked him to call my dad.

[Record No. 21, Ex. 1, pp. 63–66]

Wilkerson's Complaint alleges numerous federal claims under § 1983 against the City of Frankfort and Sutton in his official and individual capacity. The Defendants argue that they are entitled to summary judgment on all these claims. For the reasons discussed below, the Defendants' motion for summary judgment will be granted regarding all federal claims except the excessive force claim asserted against Sutton in his individual capacity.

-6-

**The § 1983 Claim Asserted Against the City of Frankfort**

Wilkerson's Complaint alleges a constitutional violation under § 1983 against the City of Frankfort, claiming that the municipality "failed to adequately train and supervise Defendant Sutton as to the proper procedure and conduct in performing the duties of a police officer in circumstances similar to those which serve as the basis for this action." [Record No. 2, p. 7] For the city to be liable under § 1983 for failure to train Sutton, Wilkerson must prove that: (1) a training program is inadequate to the tasks that the officers must perform; (2) the inadequacy is the result of the City's deliberate indifference; and (3) the inadequacy is "closely related to" or "actually caused" the plaintiff's injury. *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (citation and internal quotations omitted). *Accord City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989). A plaintiff can satisfy the "deliberate indifference" prong by demonstrating that the municipality either failed to provide adequate training in light of foreseeable consequences that could result from the lack of instruction, or failed to act in response to repeated complaints of constitutional violations by its officers. *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).

Frankfort contends that it is entitled to summary judgment on this claim because Wilkerson has not presented any facts establishing that the city failed to adequately train Sutton for the type of situation presented here. Further, it argues that even if Sutton's training was inadequate, Wilkerson has not demonstrated that such inadequacy was due to deliberate indifference. [Record No. 18, p. 34] In response, Wilkerson argues that she cannot meet her burden of establishing deliberate indifference because Frankfort did not have a policy requiring officers to fill-out "use of force" forms whenever force was used against a civilian. [Record No. 28, p. 15] As Wilkerson explains, "[o]ne of the ways to prove deliberate indifference is where the city fails to act in response

-7-

to repeated complaints of constitutional violations by its officers.  Without the policy in place to keep track, no one will ever know how many other citizens, prior to the Plaintiff, that Officer Sutton has violated." [*Id.*]

Wilkerson fails to offer any other argument in support of the § 1983 claim based Frankfort's alleged failure to adequately train Sutton.  Instead, Wilkerson argues that Frankfort's failure to have a policy requiring "use of force" forms subjects it to liability on a separate ground: that it is liable under § 1983 based on the theory that "a municipal policy was the moving force behind a violation of federally protected rights."  [*Id.*, p. 14]  Specifically, Wilkerson argues that "a moving force behind the violations of the Plaintiff's Constitutional Rights" was the fact that the City of Frankfort does not utilize "use of force" forms.  [*Id.*]

Even if this new theory of liability was properly asserted in the Complaint, Wilkerson has not established that she could recover on such a claim.  This is because municipalities are only subject to liability under § 1983 in limited circumstances.  As Wilkerson properly acknowledges, a municipality can be liable under § 1983 for unconstitutional or illegal municipal policies or customs.  *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  To assert a § 1983 claim against a municipality, the plaintiff must identify the policy or custom that caused her injury.  *Id.*  Without evidence of a causal link between the policy or custom and the plaintiff's injury, liability cannot attach to the municipality.  *Estate of Sowards v. City of Trenton*, 125 F. App'x 31, 40 (6th Cir. Feb. 24, 2005) (unpublished).  Even assuming, *arguendo*, that a municipality's failure to adopt a policy could constitute an "unconstitutional or illegal policy or custom," Wilkerson has not demonstrated a causal link between the Frankfort not using "use of force" forms and her injuries.

-8-

In summary, because Wilkerson cannot establish deliberate indifference, she has failed to make a showing sufficient to establish an essential element of the § 1983 claim alleged in the Complaint. Further, Wilkerson has not demonstrated a causal link between the Frankfort's non-use of "use of force" forms and her injuries. Thus, she has not established an essential element of the § 1983 claim based on her alternate theory of liability. For these reasons, the motion for summary judgment will be granted in favor of the City of Frankfort regarding the § 1983 claim asserted against it. *See McDonald*, 409 F.3d at 727.

**The § 1983 Claims Asserted Against Sutton in His Official Capacity**

A suit brought against an individual in his or her official capacity is the equivalent of a suit brought against the governmental entity employing that individual. *Myers v. Potter*, 422 F.3d 347, 357 (6th Cir. 2005). Thus, Wilkerson's § 1983 claim against Sutton is essentially a claim against the City of Frankfort. *See Id.*

A municipality cannot be subjected to § 1983 liability solely on a theory of *respondeat superior*. *Monell*, 436 U.S. at 690 (1978); *Ford*, 535 F.3d at 495. As previously discussed, Wilkerson failed to sufficiently establish that Frankfort is subject to § 1983 liability based on other legal theories. Therefore, since it has not been established that the city could be liable under § 1983, neither can Sutton be liable in his official capacity. Accordingly, the motion for summary judgment will be granted in favor of Sutton regarding all § 1983 claims asserted against him in his official capacity.

**The § 1983 Claims Asserted Against Sutton in his Individual Capacity**

Wilkerson's Complaint asserts numerous federal claims under § 1983 against Sutton in his individual capacity. Specifically, the Complaint alleges violations of Wilkerson's rights to: (1)

freedom from unreasonable arrest; (2) freedom from search and seizure of her person and property; (3) freedom from arrest without probable cause; (4) freedom from unreasonable force by police officers; (5) freedom from malicious prosecution; and (6) due process of law. [Record No. 2, p. 6] To succeed on her § 1983 claims, it must be demonstrated that a constitutional violation occurred and that Sutton is not entitled to qualified immunity. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

### Qualified Immunity

Qualified immunity is generally available for "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 808, 818 (1982)). The Sixth Circuit uses a three-part sequential analysis for determining whether a police officer is entitled to qualified immunity from claims asserted against the him in his individual capacity. *Vance v. Wade*, 546 F.3d 774, 784 (6th Cir.2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001); *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)). First, the Court must determine whether the facts, taken in the light most favorable to the injured party, are sufficient to establish that the officer's conduct violated a constitutional right of the injured party. Second, the Court must determine whether the right was clearly established and one which a reasonable person would have known. Finally, the Court must analyze whether the officer's actions were objectively unreasonable under the circumstances. *Id.* Wilkerson bears the burden of demonstrating that qualified immunity does not apply. *Slusher*, 540 F.3d at 453 (citation omitted).

-10-

**The Claims Related to the Constitutionality of the Arrest**

An arrest is constitutional if it is based on probable cause. *Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008) (noting that "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment") (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)). The proper inquiry for determining whether an arrest was supported by probable cause is whether, at the time of the arrest, the totality of facts and circumstances within the arresting officer's knowledge . . . were sufficient to warrant a prudent person to conclude that an individual had either committed or was committing an offense. *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The court must examine the events leading up to the arrest and decide whether the facts, viewed from the standpoint of an objectively reasonable police officer, amounted to probable cause. *Id.* (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Sutton claims he had probable cause to arrest Wilkerson for disorderly conduct for not complying with his order for her to return to the corner. [Record No. 18, pp. 11–19] Specifically, he argues that is undisputed that he ordered Wilkerson to return to the corner, that she complied initially, but then detoured from her route and walked toward a friend. Based on his observation of Wilkerson not following his order to return to the corner, Sutton argues that he had probable cause to arrest her for disorderly conduct in the second degree, in violation of KRS § 525.060. [*Id.*, p. 19] This statute provides that:

> (1) A person is guilty of disorderly conduct in the second degree when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:

*      *      *

(c)  Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency.

KRS § 525.060(1)(c).

In response, Wilkerson argues that Sutton lacked probable cause to make the arrest.  She claims that she was in the process of following Sutton's order to return to the corner when the physical encounter with the officer occurred.  Wilkerson claims that she was not ordered to a specific corner and, therefore, she disputes that her steps towards Walters constituted a detour or a refusal to obey Sutton's order since she was still moving away from the fire scene.  [Record No. 28, pp. 4–6]

As previously stated, the Court must examine the totality of the circumstances surrounding the arrest to determine whether an objectively reasonable officer could have concluded that an individual was committing a crime.  *See Torres-Ramos*, 536 F.3d 555.  Sutton was the lone law enforcement officer at the scene of a major fire when the visibly-upset Wilkerson approached the area.  Sutton told Wilkerson to return to the corner and then observed her change directions after starting to walk toward Main and St. Clair Streets.  Based on the totality of the circumstances, an objectively reasonable officer in Sutton's situation could have concluded that Wilkerson's actions constituted disorderly conduct in the second degree.  Accordingly, probable cause existed at the time of the arrest.

Since there was probable cause to arrest Wilkerson for disorderly conduct,  Sutton's conduct did not violate her constitutional rights to freedom from unreasonable arrest, freedom from unreasonable search and seizure of her person, or freedom from arrest without probable cause.  Further analysis of the issue of qualified immunity is not necessary because Wilkerson has failed to establish that a constitutional violation occurred.  Accordingly, the Court will grant Sutton's

motion for summary judgment regarding these § 1983 claims asserted against him in his individual capacity.

### The Excessive Force Claim

When a plaintiff alleges that a police officer used excessive force during an arrest, the Court should analyze the claim "under the Fourth Amendment and its 'reasonableness standard,' rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Slusher*, 540 F.3d 454. For the purposes of summary judgment, the Court must determine whether Wilkerson has alleged facts that are sufficient to demonstrate a "seizure" within the meaning of the Fourth Amendment and, if so, whether any such seizure could be considered unreasonable to a jury. *Slusher*, 540 F.3d 454.

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Graham*, 490 U.S. at 395 n.10. In *Slusher*, the Sixth Circuit held that by grabbing the plaintiff's right hand, a seizure within the meaning of the Fourth Amendment had occurred. *Slusher*, 540 F.3d 454–55. In reaching this holding, the *Slusher* Court relied on *California v. Hodari D.*, 499 U.S. 621 (1991), in which Justice Scalia explained:

> From the time of the founding to the present, the word "seizure" has meant a "taking possession." . . . To constitute an arrest, however – the quintessential "seizure of the person" under our Fourth Amendment jurisprudence – the mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the arrestee, was sufficient.

*Hodari D.*, 499 U.S. at 624 (citations omitted). Thus, under *Slusher* and *Hodari D.*, Wilkerson was seized within the meaning of the Fourth Amendment when Sutton grabbed her arm.

-13-

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake."

*Slusher*, 540 F.3d at 455 (citing *Graham*, 490 U.S. at 396).  As the *Slusher* Court explained:

> In making this determination, we used an "objective reasonableness" standard that does not include the underlying motivation of the officer.  Relevant factors to consider in evaluating what level of force is reasonable include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  These factors are not an exhaustive list, and the ultimate inquiry is whether the seizure was reasonable under the "totality of the circumstances."

*Id.*  (internal citations omitted).

Sutton argues that based on the totality of the circumstances, the force used during Wilkerson's arrest was not excessive.  In support of this argument, he explains that:

> Sergeant Sutton's grab of the Plaintiff's arm in response to her admitted detour just steps from him was not excessive.  Moreover, his response of a bear-hug, taking her to the ground and one (1) squirt of pepper spray is also not excessive in light of the Plaintiff's testimony that: "But I tensed up and tried to pull away.  And then I was grabbed and bear-hugged from behind . . . And Officer Sutton was, you know, still sitting on me basically and trying to handcuff me.  He yelled at Scot to get away or to get out of here or something.  And he was trying to pull my arms back to handcuff me.  And while he was on my back trying to pull my arms, he maced me.  And from there, he was – from there, he handcuffed me, pulled me up off the street."

[Record No. 18, p. 25]  In addition, Sutton argues that Wilkerson's testimony that she "tensed up and tried to pull away," establishes that she was "actively resisting arrest or attempting to evade arrest by flight."  [Record No. 30, p. 8]  Finally, Sutton asserts that Wilkerson's testimony that Sutton was "trying" to handcuff her establishes that she was not being fully compliant. [Record No. 18, p. 23]

-14-

Despite his arguments to the contrary, the force exerted by Sutton during his seizure of Wilkerson could be considered unreasonable.  While Wilkerson may not have complied with the exact order given by Sutton, there is no evidence that her noncompliance posed an immediate threat to the safety of Sutton or others at the scene.  In addition, based upon the evidence presented, a reasonable person could find that Wilkerson's reactions to Sutton's conduct did not constitute "actively resisting arrest or attempting to evade arrest by flight."  Finally, even considering all the exigent circumstances involved, a reasonable person could find the take-down of the Plaintiff and use of pepper spray to be unreasonable.

Viewing the facts in the light most favorable to Wilkerson, the Court concludes that the Plaintiff has presented sufficient evidence that Sutton's conduct may be viewed as violating her constitutional right to be free from unreasonable force.  This is a clearly-established constitutional right and one that a reasonable person would have known.  Finally, a reasonable person could find that Sutton's actions were objectively unreasonable under the circumstances.  *See Vance*, 546 F.3d at 784.  Therefore, for summary judgment purposes, Wilkerson has offered sufficient proof that a constitutional violation occurred and that Sutton is not entitled to qualified immunity as to this claim.  *Slusher*, 540 F.3d at 453.  Accordingly, the motion for summary judgment regarding the excessive force claim asserted against Sutton in his individual capacity under § 1983 claim will be denied.

### The Malicious Prosecution and Due Process Claims

Because lack of probable cause is a necessary element in a malicious prosecution claim, this is not a viable claim in light of this Court's finding that probable cause existed.  *See  Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981).  In addition, "*Graham* foreclosed the use of substantive

-15-

due process analysis in claims involving the use of excessive force in effecting an arrest and held that such claims are governed *solely* by the Forth Amendment prohibition against "unreasonable seizures." *Chavez v. Martinez*, 538 U.S. 760, 773 n.5 (2003) (citing *Graham*, 490 U.S. at 394–95) (holding that the Fourth Amendment provides the explicit sources of constitutional protection against the use of excess force). Therefore, Wilkerson cannot assert a due process claim under the circumstances presented. Accordingly, the motion for summary judgment will be granted in favor of Sutton regarding these claims asserted against him in his individual capacity.

### ANALYSIS – STATE CLAIMS

### Municipal Immunity

Under Kentucky law, municipalities are not afforded the same degree of immunity from tort liability as county governments. *Schwindel v. Meade County*, 113 S.W.3d 159, 165 (Ky. 2003). "A municipality is immune only for torts committed in the performance of legislative or judicial or quasi-legislative or quasi-judicial functions, and can otherwise be held vicariously liable for the torts of its employees." *Id.* (citations omitted). *See also Haney v. Lexington*, 386 S.W.2d 738, 742 (Ky. 1964) (abolishing municipal immunity "for ordinary torts"). Therefore, the City of Frankfort can be vicariously liable for any torts committed by Sutton. In addition, since the City of Frankfort does not have municipal immunity in this situation, there is also no immunity against state claims asserted against Sutton in his official capacity. The Court notes that this is a marked contrast from the treatment of *state* and *county* agencies and their employees under Kentucky law. *See, e.g., Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001).

-16-

**The State Law Claims**

Wilkerson alleges that Sutton's conduct constituted the torts of excessive execution, excessive force, assault, false arrest, malicious prosecution, and false imprisonment. [Record No. 2, p. 7] Having already held that Sutton had probable cause to arrest Wilkerson and that Wilkerson has not presented facts sufficient to establish a claim for malicious prosecution, the Court will grant the Defendants' motion for summary judgment regarding the state claim for false arrest, malicious prosecution, and false imprisonment. In addition, there does not appear to be a tort of excessive execution in Kentucky. Therefore, the Court will also grant the Defendants' motion for summary judgment regarding this claim.

Regarding excessive force under Kentucky law, an officer is liable in two circumstances: (1) he or she has reasonable grounds to make the arrest but used more force than was necessary; and (2) he or she only used necessary force in effecting the arrest but there were, in fact, no reasonable grounds for the arrest. *Dunn v. Felty*, 226 S.W.3d 68, 74 (Ky. 2007). The present case falls into the first category. Having already determined that a reasonable jury could conclude that Sutton used more force than necessary to effectuate the arrest, summary judgment on this claim would not be appropriate. If the jury finds that Sutton's conduct constituted excessive force, then it could also conclude that he is liable for tortuous assault. *Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. App. 2006). Therefore, the Court will deny the Defendants' motion for summary judgment concerning the excessive force and assault claims.

**The State Constitutional Claims**

Wilkerson's Complaint asserts that "Defendant Sutton's unjustified detention, malicious prosecution and use of excessive force against Plaintiff constituted an unreasonable search and

seizure of Plaintiff's person and an exercise of absolute and arbitrary power over the life and liberty of Plaintiff" in violation of her rights secured by Sections 2 and 10 of the Kentucky Constitution. [Record No. 2, p. 7]  For reasons already stated, the only viable state constitutional claim asserted is the claim for use of excessive force.  The Court will grant the motion for summary judgment in favor of the Defendants on all other state constitutional claims.

Section 2 of the Kentucky Constitution provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exist nowhere in a republic, not even in the largest majority."  Ky. Const. § 2.  This is essentially a due process provision similar to that in the Fourteenth Amendment.  *See Triple M. Mining Co. V. Natural Res. & Envtl. Prot. Cabinet*, 906 S.W.2d 364, 367 (Ky. App. 1995).  As previously stated, a claim for excessive force should not be analyzed under a due process provision.  *See Chavez*, 538 U.S. at 773.  Therefore, the Court will grant the motion for summary judgment in favor of the Defendants regarding the excessive force claim asserted against them under Section 2 of the Kentucky Constitution.

Section 10 of the Kentucky Constitution is the state equivalent of the Fourth Amendment to the United States Constitution.  *See Rainey v. Com.*, 197 S.W.3d 89, 91 (Ky. 2006).  As such, the analysis for the state law claim under Section 10 of the Kentucky Constitution shall be the same as the federal claim.  *Id.*  Therefore, for the same reasons the Court denied summary judgment regarding the excessive force claim asserted under § 1983, the Court will also deny summary judgment regarding this claim asserted under Section 10 of the Kentucky Constitution.

**CONCLUSION**

For the reasons discussed above, it is hereby

**ORDERED** that the Defendants' motion for summary judgment [Record No. 18] is **DENIED** regarding (a) the excessive force claim asserted against Stephen Sutton in his individual capacity pursuant to 42 U.S.C. § 1983; (b) the state claims for excessive force and assault asserted against all Defendants; and (c) the excessive force claim asserted against all Defendants pursuant to Section 10 of the Kentucky Constitution.  The Defendants' motion for summary judgment [Record No. 18] is **GRANTED** regarding all other federal and state claims asserted against all Defendants.

This 16th day of April, 2009.



Signed By:

*Danny C. Reeves*

United States District Judge